Michael McHUGH, Plaintiff–Appellee,

v.

OLYMPIA ENTERTAINMENT, INCORPORATED; Richard Ward; James Duffin; Al Glazewski; Robert Barrett; Theater Operators, Limited; Jesse Harris; William Grace; Gregory Palmer, Defendants–Appellants,

The City of Detroit; John Doe, certain unknown security guards at the Fox Theater; John Doe, certain unknown officers of the Detroit Police Department; Ronald Cooper; Jeff Shasheen, Defendants.

Nos. 00–1956, 00–2195, 00–2234.

United States Court of Appeals, Sixth Circuit.

July 22, 2002.

Before GUY and BATCHELDER, Circuit Judges; and WALTER, District Judge.[*]

### ORDER

The court having received a petition for panel rehearing, and the petition having been circulated to the original panel mem-

bers, the panel concludes that the issues raised in the petition were fully considered upon the original submission and do not affect the decision of the case. The panel thus denies the rehearing, and amends Section II(A)(1) of its original opinion with the following text:

1. Exclusion of Testimony of Treating Physician

Grace and Harris argue that the district court erred when it ruled that defendants could not ask plaintiff's treating physician, Dr. Daniel Elskens, if the fracture in plaintiff's neck preexisted the 1996 incident, and if Dr. Elskens would have performed surgery upon plaintiff regardless of any acute injury sustained in 1996. Defendants claim prejudice because they could not refute the evidence of plaintiff's injuries and disability resulting from the neck surgery. They argue that Dr. Elskens's testimony that he operated to stabilize the spine for the os odontoideum would have been more significant with the accompanying testimony that the os odontoideum was not an acute injury, and that regardless of what injuries plaintiff presented in October 1996, the same surgery would have been performed upon plaintiff. If the jury had accepted this testimony, defendants argue there would have been no evidence of excessive force because plaintiff's only acute injuries were scratches and a fractured nose.

Dr. Elskens was listed as an expert witness by the defendant police officers, but a written report under Fed.R.Civ.P. 26(a)(2) was never submitted. The Olympia defendants had listed Dr. Elskens as a witness, but not an expert witness. Plaintiff filed a motion *in limine* to exclude the testimony of certain experts, including Dr.

---

[*] The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

Elskens. The district judge initially denied the motion. In a subsequent motion *in limine,* plaintiff again asked the court to exclude or limit Dr. Elskens's testimony. The district court held that the motion was moot because the parties had resolved the issues raised in the motion *in limine* at a pretrial conference. The record does not indicate how the issue was resolved. The record demonstrates confusion during the trial among the parties and the district court as to the permitted questioning of Dr. Elskens as a treating physician.

The Olympia defendants called Dr. Elskens to testify on February 9, 2000. When asked whether plaintiff had a fractured neck, Dr. Elskens testified that plaintiff had os odontoideum, which he described as a healed or old fracture. (Tr. Vol. 12 at 5.) When asked to explain the plaintiff's condition, Dr. Elskens testified that the first cervical vertebra (C1) was separated from the second cervical vertebra (C2). Upon plaintiff's objection, the district court refused to allow defendants to ask Dr. Elskens when the separation occurred because an expert witness report had not been prepared under Rule 26.

Dr. Elskens then went on to testify that after placing plaintiff in traction and conducting a CT scan, he found "that the odontoid process or dens was a separate piece, and it looked like it had a very good cortical margin, which is the case of a well healed bone." (Tr. Vol. 12 at 11.) He further stated that "We recommended that he have a surgical intervention to stop the C1 from slipping further on C2." He explained that this recommendation was made because if the C1 vertebra continued to come forward on the C2 vertebra, then the space for the spinal cord would narrow which could result in damage to the spinal cord. (Tr. Vol. 12 at 15.)

After objection, the district court then refused to allow Dr. Elskens to testify whether he would have done the surgery even without the 1996 injury. (Tr. Vol. 12 at 15.) When asked whether the surgery put plaintiff at more risk of injury because of his neck, Dr. Elskens testified: "No. The hope is by eliminating that risk of subluxation, you are reducing the chance of injury, from someone who has that subluxation." (Tr. Vol. 12 at 16.) When asked whether the os odontoideum is a stable condition, Dr. Elskens replied "No, it is not considered stable. That is why we recommend treatment for it." (Tr. Vol. 12 at 20.) In further explaining how subluxation was different from os odontoideum, Dr. Elskens testified: "The instability of the os odontoideum is that it will lead to subluxation.... [T]here's nothing that's going to stop C1 from coming forward on C2, which runs the risk of causing spinal cord injury." (Tr. Vol. 12 at 21.) He further clarified that the os odontoideum condition leads to subluxation. (Tr. Vol. 12 at 21.)

The Olympia defendants later made an offer of proof that Dr. Elskens would have testified that the 1996 injury brought to light the need for the surgery on the os odontoideum. After a recess, the district judge said that his notes showed that he ruled at the second pretrial conference that the treating physician's notes were comparable or substantive to the form of a formal Rule 26 report. The district judge then informed defense counsel that he could recall Dr. Elskens and "ask the questions that call for his opinion." (Tr. Vol. 12 at 53.)

The following week on February 14, 2000, the district court asked counsel for the Olympia defendants whether he had his questions ready for Dr. Elskens so that the district court could review the offer of proof. (Tr. Vol. 15 at 10.) The district judge ruled that the defense could ask the following three questions: (1) why did Dr.

Elskens perform the surgery, (2) did the traction reduce the subluxation, and (3) what acute injury did plaintiff have?[1] The district court would not allow a proposed fourth question: would Dr. Elskens have performed the surgery anyway without the injury suffered in October 1996. The district court ruled that the question was too speculative and was in the area of an expert witness. (Tr. Vol. 15 at 12.)

When defense counsel asked for further clarification on its ruling, the district court held that defendants could not ask Dr. Elskens whether the os odontoideum was chronic or acute. but the court stated that it would allow Dr. Elskens to describe plaintiff's acute injury.[2] Thus, although defendants could not ask when the os odontoideum occurred, they could have asked Dr. Elskens to describe the acute injury.

When Dr. Elskens was recalled on that same day, he was asked only one question: why did he operate on the plaintiff? Dr. Elskens testified: "I operated on him to stabilize the spine for the os odontoideum." (Tr. Vol. 15 at 34.)˙ He was asked no further questions by any party.

■ We review a district court's evidentiary decisions for abuse of discretion and will reverse only when we find that such abuse has caused more than harmless error. *Argentine v. United Steelworkers of Am.*, 287 F.3d 476, 486 (6th Cir.2002). Dr. Elskens testified that the os odontoideum was an old injury. The other defense expert witnesses also presented testimony that the os odontoideum was an old injury

---

1. MR. SEWARD: What acute injury did the Plaintiff have. Define what subluxation is. Explain what subluxation is in regards to—

   THE COURT: He has already done that.

   MR. SEWARD: In regards to the OO.

   THE COURT: Nope. You've given me four questions, three of which were agreed to last Friday, not by Mr. Ficaro, but by the Court.

   . . . .

   THE COURT: Well, if you limit yourself to the three questions of why he did the surgery and the question concerning the spine straightening and acute injuries, I think you're within him as a treating witness and not as an expert witness. And that's what he's going to be limited to."

   (Tr. Vol. 15 at 11.)

2. "MR. SEWARD: I thought that's exactly what you said we could do.

   THE COURT: Well, I've changed my mind if that's what I said, because I have read the *Baker* case and *Young versus United States* that has been provided to me this morning.

   MR. SEWARD: So what—I have no clue right now as to what the rulings are or is regarding Dr. Elskens.

   THE COURT: You said on Friday you wanted to ask why he did the surgery. And you said that today. And I'm going to overrule Mr. Ficaro's objection of asked and answered. . . .

   And you wanted to ask about the spine straightening in response to the traction. You may ask him that.

   Whether or not his treatment—within his treatment, he felt that this was an acute injury or not. And that's the question that you said that I cut you off on before. So, depending on whether you're right or Mr. Ficaro's right, at least one of those questions is material and the other two may or may not have been answered."

   (Tr. Vol. 15 at 13–14.) After discussing another witness and a recess, the Olympia defense counsel again raised the issue of Dr. Elskens. The district court responded:

   "THE COURT: Well, you are going to be allowed to ask why did he do this.

   MR. SEWARD: I want to be able—okay.

   THE COURT: And that's what you asked for Friday. And you asked about spine straightening Friday and you asked about whether he would describe it as an acute injury or not.

   MR. SEWARD: And I also want to go through his notes. I remember specifically saying I wanted to go through his notes, what he meant by that.

   THE COURT: No. The ruling has been made."

   (Tr. Vol. 15 at 17–18.)

that was either congenital or occurred 10 to 15 years prior to the 1996 incident. Further, the district court would have allowed the defendants to ask Dr. Elskens on recall to describe the acute injuries plaintiff suffered in 1996, which presumably would not have included the os odontoideum. Defendants chose not to ask this question on recall. The ruling that defendants could not ask Dr. Elskens when the os odontoideum occurred, therefore, to the extent it constituted error, was harmless error.

Likewise, any error in not allowing defendants to ask whether Dr. Elskens would have performed the surgery regardless of the acute injuries was also harmless error. Dr. Elskens testified that the surgery was performed because of the os odontoideum. He explained that os odontoideum is an unstable condition and that was why he recommended surgery. He testified that os odontoideum is an unstable condition because it can lead to subluxation and spinal cord injury. Dr. Elskens explained that the surgery was intended to reduce the risk of subluxation and injury. Evidence was presented, therefore, from which a jury could have concluded that the os odontoideum and the resulting surgery were not the result of the 1996 incident.

In fact, this argument was made in closing based on the evidence presented at trial. The attorney for the Olympia defendants argued: "The surgery had nothing to do with October 18, 1996. The surgery was to fix the OO condition. That's what Dr. Elskens says." (Tr. Vol. 16 at 237.) The attorney for Grace and Harris also argued: "Dr. Elskens said that the surgery was performed because of the OO. He didn't say that the surgery was caused or performed because of the subluxation." (Tr. Vol. 17 at 59). It is not necessary for us to decide whether defendants should have been allowed to ask Dr. Elskens whether he would have performed the surgery regardless of plaintiff's 1996 injuries. The error, to the extent it was error, in refusing to allow defendants to ask this follow up question was harmless error.